# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAZMEN WYATT | : | JURY DEMANDED |
| Plaintiff, | : | |
| v. | : | |
| | : | No.    21-02406 |
| PECO ENERGY COMPANY | : | |
| Defendant. | : | |

## JOINT CASE REPORT

Plaintiff Jazmen Wyatt and Defendant PECO Energy Company, through their undersigned counsel and pursuant to this Court's July 28, 2021 Order, submit the following Joint Report of their Rule 26(f) meeting.

**Positions of the Parties**

*Plaintiff's Assertion:*

Plaintiff, Jazmen Wyatt ("Plaintiff") brings claims against her former employer, PECO Energy Company ("Defendant") under the Americans with Disabilities Act, the Family and Medical Leave Act and the Pennsylvania Human Relations Act arising out of the termination of her employment.

On or about July 15, 2019 Defendant hired Plaintiff as a call center representative. At all times material to her claims, Plaintiff is diagnosed with Lupus. In or around October of 2019, Plaintiff sent an email to Defendant's call center manager, Suzette Adams, requesting to work in an area of the call center where the lights were dimmer, as bright lights were exacerbating symptoms of her lupus.

In 2020, Plaintiff called out of work due to a worsening of her mental health. Defendant's supervisor, Sandra Preston, made various discriminatory statements to Plaintiff with

4852-0329-4449.5

respect to her diagnosed medical condition and her need to call out of work, such as that Plaintiff "could not handle the job requirements" and that "this might not be the job for [Plaintiff]." On June 5, 2020, Ms. Preston, told Plaintiff that she had "one foot in and one food out" of her employment with Defendant.

On June 10, 2020, due to a decline in her mental health, Plaintiff applied and was approved for a short term disability leave, with a return to work date on or about September 8, 2020. Plaintiff was subsequently diagnosed with generalized anxiety disorder and major depressive disorder, and was prescribed medication and attended therapy appointments to stabilize her condition. On September 2, 2020, Plaintiff was informed by Defendant's occupational health service nurse, Laura Rippert, that Plaintiff needed to return to work immediately. At that time, Plaintiff was not yet stable enough to return to work.

On September 9, Plaintiff made a formal complaint to Defendant's ethics line regarding Ms. Preston's discriminatory remarks made toward her. On September 10, 2020, under the advisement of her therapist, Plaintiff applied for intermittent FMLA leave. On September 11, 2020, Plaintiff made a complaint to Defendant's call center director, Colleen Burke, regarding Ms. Preston, and additionally indicated that she had also called Defendant's ethics line and was worried she would face retaliation. On September 15, 2020, Plaintiff's request for intermittent FMLA leave was approved, allowing Plaintiff time off for episodic flare-ups of her diagnosed medical conditions for up to four (4) days a week, as well as time away from work to attend scheduled medical appointments. On September 28, 2020, Defendant terminated Plaintiff's employment

Plaintiff contends that Defendant failed to reasonably accommodate Plaintiff's lupus or mental health disability and that Defendant failed to meaningfully engage in an interactive process towards the development of a reasonable accommodation for Plaintiff's disability.

2

Plaintiff's employment was terminated in retaliation for filing for intermittent FMLA leave to cover her latenesses and/or absences due to her medical condition.

*Defendant's Assertion:*

Shortly after beginning her employment as a Customer Care Center Representative in July of 2019, Plaintiff requested an accommodation regarding the lighting at her Call Center work station. Defendant quickly provided that requested accommodation.

In January of 2020, Plaintiff began working on the team of Sandra Preston, Senior Supervisor for the Customer Care Center. Although Plaintiff picked up on techniques quickly and performed well when at work, she also had a pattern of taking unapproved long weekends, in violation of the attendance policy. Ms. Preston counselled Plaintiff for that violation.

On June 10, 2020, Plaintiff requested and was approved for a short-term disability (STD) leave, which continued through September 2020, at which time Defendant received information from Plaintiff's medical provider indicating that Plaintiff was approved to return to work. After receiving that information, Defendant informed Plaintiff that her STD period had ended and, unless she provided new information, she would be expected to return to work on September 9, 2020.

As a PECO Customer Care Representative, Plaintiff's duties could include receiving natural gas emergency calls. For that reason, her role was subject to U.S. Department of Transportation (DOT) regulations. Pursuant to applicable DOT regulations, and Company policy, because Plaintiff was returning from a leave of more than 60 days, she was required to submit to a drug and alcohol test upon her return to work.

On September 4, 2020, Plaintiff provided a urine sample at the ArcPoints Labs in Philadelphia for drug testing. The results of that drug test were subsequently reported to Defendant as "invalid." Accordingly, Plaintiff was required to submit to a second drug test.

On September 15, 2020, at 10:45 am, Plaintiff was instructed to submit to a second drug test at Defendant's Main Office Building (MOB). When Plaintiff's arrived at the MOB to provide the urine specimen for her second drug test, she initially claimed that she needed to urinate urgently. As a result, Plaintiff was permitted to proceed to the front of the line to expedite her testing. However, upon learning that the urine collection for her second test had to be observed, Plaintiff then claimed that she was unable to urinate.[1]

In accordance with DOT regulations and Defendant's policy, Plaintiff was offered 40 ounces of water to drink and a period of three hours in which to produce a urine sample for her second drug test. See DOT Rule 49 CFR Part 40 Sec. 40.193 (When an employee does not provide a sufficient urine sample, "[u]rge the employee to drink up to 40 ounces of fluid, distributed reasonably through a period of up to three hours, or until the individual has provided a sufficient urine specimen, whichever occurs first."). Plaintiff was encouraged to make attempts to urinate, and she was also advised that leaving before three hours were up would be deemed a refusal to take the drug test. Nevertheless, Plaintiff left without providing a urine sample and before the three hours were up, saying only that it would be "pointless to stay." As a result of Plaintiff's refusal to provide a urine sample at the second drug test, her employment was terminated.

Between the first and second drug tests, on September 11, 2020, Plaintiff met with Colleen Burt, Senior HR Business Partner, to discuss concerns Plaintiff voiced about her supervisor, Ms. Preston. That same day, Plaintiff also filed an official ethics complaint making the very same concerns about Ms. Preston. In particular, Plaintiff alleged that Ms. Preston once

---

[1] Pursuant to DOT regulations, because the first drug test was invalid, Plaintiff was required to be observed providing the second urine sample. See DOT Drug and Alcohol Testing Rule 49 CFR Part 40 Sec. 40.67(b) ("As an employer, you must direct a collection under direct observation of an employee if the drug test is a return-to-duty test or a follow-up test.").

4

said: "you know you have one foot in and one foot out the door." She also said that Ms. Preston was "very cold" when it discussing work related issues leaving Plaintiff feeling "overwhelmed." Ms. Preston denied making the statements attributed to her by Plaintiff. Ms. Burt fully investigated Plaintiff's complaints and concluded that they did not support any findings of violations of Company policies or Exelon's Code of Business Conduct.

**Jurisdiction**

Jurisdiction is based on 28 U.S.C. 1331 because the claims asserted by Plaintiff under the Americans with Disabilities Act and Family and Medical Leave Act raise federal questions. Supplemental jurisdiction with respect to the Pennsylvania Human Relations Act claim is based on 28 U.S.C. 1367.

**Causes of Action, Elements & Relief**

Given the facts set forth in Plaintiff's assertion above, Plaintiff is asserting claims under the Americans with Disabilities Act, The Family and Medical Leave Act and the Pennsylvania Human Relations Act arising out of the termination of her employment and Defendant's refusal to accommodate her disability. Plaintiff seeks lost earnings, lost front pay, lost back pay, emotional distress, punitive damages and attorneys' fees.

**Defenses and Affirmative Defenses**

Defendant maintains that all actions with respect to Plaintiff's employment were taken for legitimate, non-discriminatory reasons. Defendant quickly granted Plaintiff's request for accommodation, and readily allowed Plaintiff to take leave under the Family and Medical Leave Act. Neither Plaintiff's request for accommodation, nor any leave taken by Plaintiff were discussed or considered in connection with the decision to terminate Plaintiff's employment for refusal to take drug test.

**Rule 26 Disclosures**

The parties have already exchanged Rule 26(a)(1) Disclosures and have served written discovery.

**Completion of Discovery**

Counsel for the parties have conferred and propose the following discovery and pretrial schedule:

| Rule 26(a) Disclosure Statements | Completed |
|---|---|
| Amended pleadings including addition of any additional parties. and added parties | October 22, 2021 |
| Completion of fact discovery, including written discovery, document production, and fact witness depositions.<br><br>(*Discovery requests must be served in time to be responded to under the Rules prior to the date of completion of fact discovery.*) | January 31, 2022 |
| Expert Discovery | Affirmative expert reports to be served by 21 days after close of fact discovery [February 21, 2022];<br><br>Rebuttal expert reports to be served by 30 days after service of affirmative expert report to which it applies;<br><br>Expert depositions to be held after filing of expert reports and within 35 days of service of rebuttal expert reports. |
| Dispositive Motions | 90 days after completion of expert depositions, May 22, 2022 |
| Calendar Control Date | Counsel for Plaintiff to arrange for telephone status conference with Court at least every 90 days, if no other Court appearance within the prior 90 days. |

4852-0329-4449.5

| | |
|---|---|
| Final Pre-Trial Conference | 30 days after decision any Dispositive Motions, [Unknown]<br><br>Or<br><br>If no dispositive motions are filed, within 30 days after date for filing of dispositive motions, as scheduled by the Court, June 21, 2022<br><br>(*Counsel for Plaintiff to file letter with Court asking for the scheduling of a final pretrial conference by these dates.*) |

**Necessary Parties**

The parties believe that all necessary and indispensable parties have been joined in this action.

**Settlement**

The parties have not yet engaged in any settlement negotiations.

**Counsel**

The following counsel have participated in Rule 16 Conference on behalf of Plaintiff Jazmen Wyatt:

    Graham F. Baird, Law Office of Eric A. Shore, P.C.

The following counsel have participated in the Rule 16 Conference on behalf of Defendant PECO Energy Company:

    Christopher J. Moran, Troutman Pepper Hamilton Sanders LLP

Dated this 9th day of September, 2021.

| LAW OFFICE OF ERIC A. SHORE, P.C. | TROUTMAN PEPPER HAMILTON SANDERS, LLP |
|---|---|
| /s/Graham F. Baird | /s/ Christopher J. Moran |
| Graham F. Baird | Christopher J. Moran, Esquire |
| Two Penn Center | Troutman Pepper Hamilton Sanders, LLP |
| 1500 JFK Boulevard, Suite 1240 | 3000 Two Logan Square |
| Philadelphia, PA 19102 | Eighteenth & Arch Streets |
| (267) 546-0131 | Philadelphia, PA 19103 |
| (215) 944-6124 | christopher.moran@troutman.com |
| grahamb@ericshore.com | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |