IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAZMEN WYATT | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | NO. 2:21-cv-02406-NIQA |
| | : | |
| PECO ENERGY COMPANY | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, PECO Energy Company ("PECO" or "Defendant"), by and through its undersigned counsel, hereby respectfully submits this Reply to the Brief in Opposition to Defendant's Motion for Summary Judgment ("Opposition Brief") filed by Plaintiff Jazmen Wyatt ("Ms. Wyatt" or "Plaintiff").

**<u>INTRODUCTION</u>**

In its Memorandum of Law in Support of Defendant's Motion for Summary Judgment, PECO put forth ample evidence supporting its legitimate, non-discriminatory reason for terminating Plaintiff's employment.  As Plaintiff admitted in her deposition, she had been advised, and understood, that if she chose to leave her follow-up drug test in less than three hours without providing a urine specimen that her conduct would be deemed a refusal to submit to the drug test and her employment would be subject to immediate termination under PECO's Drug and Alcohol Policy  (Pl. Dep. I at 106:2-16).  Nevertheless, Plaintiff voluntarily chose to do so and, for that reason, her employment was terminated.

1

**ARGUMENT**

**A. Plaintiff's Opposition Brief Mischaracterizes Important Facts.**

In her Brief, Plaintiff mischaracterizes important facts in an unavailing effort to excuse her behavior and conceal her own responsibility for the termination of her employment.

First, Plaintiff incorrectly asserts that the results of her first drug test results were "mysteriously invalidated." (Opposition Brief at 3). In fact, Plaintiff was advised that there was a problem with the results of her first drug test, and she had the opportunity to speak directly with the Medical Review Officer ("MRO") about that situation and to ask him any questions that she may have had. (Pl. Dep. II at 25:8-12). During her conversation with the MRO, Plaintiff claimed to have a medical reason (pre-existing kidney issues) that could explain why the first test results might have been abnormal. (Pl. Dep. II at 25:10-19). Thus, the results to her first drug test were not mysteriously invalidated for an unspecified reason as Plaintiff now claims.

Second, Plaintiff's incorrectly asserts, without any record citation, that Defendant concedes that Plaintiff "did not actually violate" the PECO drug test policy. (Opposition Brief at 5). In fact, Plaintiff was expressly advised by PECO that if she left the follow-up drug test in under three hours without providing a specimen, her conduct would be deemed a refusal to submit to testing in violation of the policy, which would subject her to termination. (Pl. Dep. I at 106:2-16).

Third, Plaintiff incorrectly asserts that her follow-up test was "onerous, burdensome, [and] sexually harassing." (Opposition Brief at 6). In fact, the record evidence shows that her follow-up test was administered in accordance with the applicable DOT regulations. As Plaintiff admitted at her deposition, those regulations require that the collection of a specimen for a follow-up drug test be directly observed. (Pl. Dep. II at 42:22-43:3). *See* 40 C.F.R. § 40.67(b)

2

("As an employer, you must direct a collection under direct observation of an employee if the drug test is a return-to-duty test or a follow-up test."). Contrary to the unsupported assertion in Plaintiff's Opposition, Plaintiff was not required to be "naked" (Opposition Brief at 3), and the test was also administered by a female employee. (PECO's Memorandum at 13-14). Thus, there is no evidence to suggest that the test was administered in an onerous, burdensome, or sexually harassing manner.

Fourth, Plaintiff incorrectly asserts that she experienced an "emergency" which required her to leave the follow-up drug test early. (Opposition Brief at 3). In fact Plaintiff admitted that she left early because her kids were at home bickering amongst themselves and bothering her about it. (Pl. Dep. I at 105:20-21; 106:14-16; 107:11-14) ("So, you know, I keep getting text messages, phone calls, you know, when am I coming home, she's doing this and she's doing that."). PECO had explained to Plaintiff that, under the Policy, leaving the test site before three hours had passed would be deemed a refusal to test and would subject her to immediate discharge, and she chose to leave anyway. (Pl. Dep. I at 106:2-4; 106:14-16). Plaintiff was also advised that, as long as she remained at the testing facility for three hours, she would be given the opportunity to provide medical documentation supporting her claimed inability to provide a specimen. (Pl. Dep. I at 104:19-22). Being pestered by one's children is hardly an emergency that would justify leaving a mandatory drug test 30 minutes before the end of the three-hour period while knowing full well that doing so was grounds for immediate discharge.

Lastly, Plaintiff offers no evidence that would suggest that the Policy was selectively applied or that any other similarly situated employees were treated differently. (Pl. Dep. II at 42:18-43:13). In fact, other PECO employees who work in DOT-covered positions were subject to the same drug testing regulations as applied to Plaintiff. For example, Plaintiff's supervisor

3

testified that she had been drug tested twice within the past year based on "random selection" as directed by DOT regulations.  (Preston Dep. at 40:1-10).

In sum, we respectfully submit that this Court should reject Plaintiff's attempt to shift the blame onto PECO for Plaintiff leaving her follow-up drug test early without providing a specimen.  The fact is that Plaintiff chose to leave early without providing a specimen and knowing that she would be subject to discharge.  Given that Plaintiff's actions clearly violated the Policy and DOT regulations, PECO had a legitimate, non-discriminatory reason for terminating her employment.

### B.  Plaintiff Abandons Her ADA Failure to Accommodate Claim, and Improperly Attempts to Insert an ADA Retaliation Claim that Was Not Pled.

In her Brief, Plaintiff abandons her ADA failure to accommodate claim.  (Opposition Brief at 2).  She then improperly attempts to insert an ADA retaliation claim which was never pled in her Complaint.[1]  Plaintiff should not be allowed to raise a claim for ADA retaliation at this stage of the litigation.  *Carr v. Gillis Associated Industries, Inc.*, 227 Fed.Appx. 172, 176 (3d Cir.2007); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F.Supp.2d 366, 371 n. 3 (E.D.Pa.2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers" to a motion for summary judgment.).

Moreover, even if Plaintiff were allowed to proceed with an ADA retaliation claim, it would fail for the same reasons her FMLA retaliation claim fails.[2]  Plaintiff cannot establish a *prima facie* case for retaliation under the ADA because no causal connection exists between her

---

[1] The only retaliation claim in the Complaint is under the FMLA.  (Complaint, Docket Entry No. 1 at ¶¶ 47-48).

[2] An ADA retaliation claim is properly analyzed under the *McDonnell Douglas* burden-shifting framework.  In order to establish a *prima facie* case of ADA retaliation, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Mercer v. SEPTA*, 608 F. App'x 60, 65–66 (3d Cir. 2015).  Further, without other evidence, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred. The adverse action must occur within days, not months, of the protected activity." *Mercer*, 608 F. App'x at 65–66.

4

protected activity (requesting ADA accommodations) and PECO's adverse employment action. As previously discussed at length, Plaintiff refused to submit to a drug test in violation of the Policy. Plaintiff's termination was unrelated to any request for ADA accommodations.

Further, a causal link cannot be inferred because the timing of the termination was not "unusually suggestive" of retaliatory motive. Plaintiff never submitted an Accommodations Request Form after August 13, 2019, and she did not testify to requesting any accommodation after October of 2019. (PECO's Memorandum at 4-6; Guenst Decl. at ¶¶ 15-17). Thus, there was almost one full year between Plaintiff's last request for an accommodation and her termination due to her violation of the Policy. In sum, this Court should reject Plaintiff's attempt to add an ADA retaliation claim because, even if it was found to be properly pled (which it was not), it would still fail.

### C. Plaintiff Fails to Offer Any Evidence that She Was Retaliated Against by Her Supervisor for Taking Medical Leave or for Filing a Complaint.

In her Opposition Brief, Plaintiff claims that she experienced "hostility" and retaliation by Ms. Preston because Plaintiff applied for and took protected leave and filed a complaint against Ms. Preston. (Opposition Brief at 13). However, there is no record evidence that supports those claims. To the contrary, it is undisputed that Ms. Preston was neither aware of Plaintiff's disability nor the reasons for which Plaintiff took leave (Preston Dep. at 19:12-19; 20:1-11; Pl. Dep. II at 58:2-6). Likewise, it is undisputed that Ms. Preston was not involved in the decision to terminate Plaintiff's employment (Preston Dep. at 23:15-21). Lastly, it is undisputed that, at no time during any of the stages in Plaintiff's termination process did those participating in the decision-making discuss: 1) any medical condition or disability of Plaintiff; 2) any short term disability or leave taken by Plaintiff; or 3) any complaint Plaintiff had made about Ms. Preston. (Burt Decl. at ¶ 18). Rather, the only factor considered in the termination discussions was

5

Plaintiff's decision to leave the testing facility early without providing a urine specimen for her follow-up drug test even after being informed that doing so would be deemed a refusal to test, which would subject her to discharge.  (Burt Decl. at ¶ 17).  PECO had a legitimate, non-discriminatory reason for the termination of Plaintiff's employment, and this Court should reject Plaintiff's attempts to excuse her clear violation of the Policy.

## CONCLUSION

For the foregoing reasons, and those contained in the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Defendant PECO Energy Company respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment in PECO's favor, dismiss Plaintiff Jazmen Wyatt's claims in their entirety and with prejudice, and award such other relief as this Court deems appropriate.

Respectfully Submitted,

*/s/ Christopher J. Moran*
Christopher J. Moran (PA 68142)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000

Dated:  September 8, 2022                    *Counsel for Defendant*

6

129628577v2